# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS CONCHAS,<br><br>          Petitioner,<br><br>     v.<br><br>J. HARTLEY, Warden<br><br>          Respondent. | 1:10-cv-00622-OWW-DLB (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Petitioner is presently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction of second degree murder with use of a knife. Petitioner is serving a term of sixteen-years to life.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, Petitioner challenges the Board of Parole Hearings' ("Board") April 8, 2009 decision finding him unsuitable for release.

On December 14, 2009, Petitioner filed a petition for writ of habeas corpus in the Ventura County Superior Court challenging the Board's 2008 decision. The superior court denied the

---

[1] This information is derived from the state court documents attached to Respondent's Answer, which is not subject to dispute.

1

petition in a reasoned decision finding some evidence to support the determination that Petitioner remains an unreasonable risk to public safety.

Petitioner then filed petitions for writs of habeas corpus in the California Court of Appeal and California Supreme Court.  Both petitions were summarily denied.

Petitioner filed the instant petition for writ of habeas corpus on April 9, 2010.  Respondent filed an answer to the petition on July 7, 2010, and Petitioner filed a traverse on July 22, 2010.

## STATEMENT OF FACTS

On May 2, 1992, in retaliation for the vandalism of Petitioner's vehicle, he and several other members of the Avenue Gang went to Camino Real Park to approach revival gang members believed to have committed the vandalism.  Petitioner, Miguel Morales, Rafael Robles, and others confronted victims Navarro and Villanueva.  Petitioner struck Villanueva with a metal pipe and then attempted to stab him after Villanueva claimed no gang affiliation.  He was ultimately chased down the street by Morales.  In the meantime, Navarro was pushed up against the wall by several males but was able to break loose.  Villanueva and Navarro attempted to get into their vehicle to escape but were not successful because the car was locked.  After chasing Navarro, Petitioner stabbed him three times resulting in his death.

## DISCUSSION

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme.  Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

    (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

    Section 2402(d) sets forth the circumstances tending to show suitability which include:

    (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

    (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

    (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

    (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

    (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

    (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

    (7) Age. The prisoner's present age reduces the probability of recidivism.

    (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

    (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

    The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor finds the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609. Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing

5

1   Hayward v. Marshall, 603 F.3d at 560).

2       A.    <u>Last Reasoned Decision of Ventura County Superior Court</u>

3   The Ventura County Superior Court denied the petition in the last reasoned decision stating the following:

> The court has read and considered the petition, the transcript of the Board hearing and the other documents submitted with the petition.
>
> The ultimate question to be decided by the Board is whether the inmate would constitute a current threat to society if released. (*In re Lawrence* (2008) 44 Cal.4th 1181, 1205-06; *In re Lewis* (2009) 172 Cal.App.4th 13, 30) The standard of judicial review is whether "some evidence" supports the decision of the Board that the inmate constitutes a current threat to public safety. (*Lawrence*, <u>supra</u> at 1212)
>
> The circumstances of the commitment offense may be cited as a basis for the decision denying parole, so long as the record also shows something in the prisoner's history or current mental state which indicates that the inference of dangerousness deriving from the commitment offense remains viable. (*Lawrence*, <u>supra</u> at 1214)
>
> Because the Board's discretion to make parole decisions is "great", the standard of judicial review is "extremely deferential." (*In re Rosen[k]rantz* (2002) 29 Cal.4th 616, 665; *Board of Prison [T]erms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1232-1233) Accordingly, both the resolution of conflicting evidence and the placing of weight upon the evidence are within the Board's sole authority and may not be questioned by the reviewing court. Nor may the court overturn the Board's decision by deeming the evidence favoring parole to far outweigh that supporting continued confinement. (*Rosen[k]rantz*, <u>supra</u> at 655-656 and 679; *In re Shaputis* (2008) 44 cal.4th 1241, 1260, 1261; *Board of Prison Terms*, <u>supra</u> at 1232-1233) Instead, the court's sole task is to ascertain if there is some evidence in the record before the Board supporting its decision to deny parole, in accordance with the statutory and regulatory factors. (*Board of Prison Terms*, <u>supra</u> at 1233)
>
> After review of all of the submitted documents and exhibits, it appears to the court that the Board duly considered all appropriate parole suitability factors, both positive and negative, before concluding that the petitioner would pose a current threat to public safety if released.
>
> It further appears that there is some evidence in the record to support that conclusion, including the reports of Dr. Sahni dated September 18, 2007 and Dr. Starrett dated March 18, 2008, as read into the record, which give current relevance to the historic factors, including the cruel, callous and dispassionate manner in which the offense was committed as well as the petitioner's past criminal history and gang affiliation as a juvenile. This court cannot say that there is no evidence in the record that supports the Board's conclusion that petitioner would pose a current threat to public safety if released.

(Exhibit 2, to Answer.)

  B.  <u>2009 Board Hearing</u>

  At Petitioner's Board hearing in 2009, the Board found him to be an unreasonable risk to public safety if released based on the circumstances of the commitment offense, present attitude toward the crime, prior criminal history, gang affiliation, and psychological evaluation. As stated above, the Ventura County Superior Court found "some evidence" supported the Board's decision.

  The commitment offense involved multiple victims of a rival gang being attacked in the same incident in retaliation for the vandalism of Petitioner's vehicle. Petitioner and several of his gang associates, approached the rival gang at the park and Petitioner got into a fist fight with Navarro. After the victim tried to flee, Petitioner chased him and hit him with a pipe and stabbed him three times. It was the third stab wound that resulted in the Navarro's death.

  The Board cited two psychological evaluations which opined that Petitioner did not fully understand the significance of his past criminal behavior at such an early age. More specifically, the Board cited Dr. Starrett's report which stated:

> While the inmate appears sincerely committed to bettering himself, the undersigned opines that he does not appear to fully understand the true significance of his past criminal behavior and its presence at such a young age. The inmate does not appear fully aware of the long-term risks associated with early criminality or diagnosis of antisocial personality disorder. Research has shown that individuals with a diagnosis are at an increased risk of criminal recidivism given the enduring nature of personality disorders.
>
> Finally, the inmate received moderate scores on the HCR-20 and on the LS/CMI measures that have been well correlated with future risk of violence and criminal recidivism.

(Ex. 3c, to Answer, at 2-3.) This finding was properly considered as some evidence to support the finding that Petitioner remains an unreasonable risk to public safety. Cal. Code Regs. tit. 15, § 2402(b). This finding was properly considered as some evidence that Petitioner remains a current risk to public safety is released. <u>See e.g.</u> <u>Hayward</u>, 603 F.3d at 563 (psychologist's evaluation that prisoner posed a "low to moderate" risk of future violence, coupled with evidence that offense was particularly aggravated, is sufficient evidence to demonstrate future dangerousness to support denial of parole.)

1    Petitioner has a past criminal history as a juvenile and was on juvenile probation-which
2 contained a condition that he not associate with gang members-at the time of the commitment
3 offense.  In January 1991, Petitioner was cited for carrying a concealed weapon during the
4 commission of a street gang crime.  In February 1991, Petitioner was cited for being in violation
5 of curfew.  In 1992, Petitioner was cited for manufacturing a weapon and willful disobedience,
6 resulting in a ninety day sentence at the Clifton Tatum Center.  In April 1992, he violated
7 probation.  In May 1992, Petitioner was cited for tampering with a vehicle.  Although Petitioner's
8 prior offenses did not involve violence pursuant to section 2402(c)(2), the Board could properly
9 consider this evidence pursuant to section 2402(b).  Cal. Code Regs. tit. 15, § 2402(b).

10    The Board was concerned because Petitioner continued to minimize his involvement with
11 the gang by claiming to be a mere associate and not a member.  At the hearing, Petitioner
12 admitted that he associated with several members of the gang, engaged in certain gang activities
13 with them, and dressed in gang attire.  Despite his admissions, Petitioner continued to claim that
14 he was not a member.  Given that the commitment offense was gang related, the Board was
15 legitimately concerned that Petitioner was not being truthful about his gang involvement.

16    The Board commended Petitioner for improving himself through vocational
17 programming, institutional job training, further education, and self-help programming.  However,
18 the Board found the positive factors did not outweigh the factors of unsuitability, and the
19 superior court's determination that the circumstances of the commitment offense, present mental
20 state, prior criminal history, gang involvement, and psychological evaluation provided some
21 evidence to support the Board's finding that Petitioner remains an unreasonable risk to public
22 safety was not an unreasonable determination of the some evidence standard, nor an
23 unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus is DENIED; and
2. The Clerk of Court is directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District

Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **October 9, 2010**          /s/ **Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE